PEOPLE *v*. FITZGERALD.

1. CRIMINAL LAW—TRIAL—INSTRUCTIONS—SILENCE OF DEFENDANT —RECEIVING STOLEN GOODS.

In a prosecution for receiving stolen property, testimony by the chief of police that when defendant was brought in witness told him he was in wrong, and asked if he wanted "to tell us about this," when he responded, "I don't want to say anything about it until I see an attorney," *held*, not to warrant submission of his silence as evidence of guilt.

2. WITNESSES—CROSS-EXAMINATION—DIRECT EXAMINATION.

In a prosecution for receiving stolen property, where the person from whom defendant had bought the goods testified, for the purpose of showing guilty knowledge, that defendant was present when he sold some ham and bacon, which had been stolen, to third parties, who were afterwards prosecuted, it was not error to exclude testimony, on cross-examination, that said parties were acquitted on charge of receiving stolen blankets, witness having admitted, on cross-examination, that he stole the blankets.

See notes in 25 L. R. A. (N. S.) 542; 42 L. R. A. (N. S.) 889.

but the subject of the blankets was not gone into on either direct or redirect examination by the prosecuting attorney.

Exceptions before judgment from Jackson; Williams, J. Submitted October 17, 1918. (Docket No. 114.) Decided December 27, 1918.

Edward Fitzgerald was convicted of receiving stolen goods. Reversed.

*James J. Noon* and *John F. Henigan*, for appellant.

*Nathan E. Bailey*, Prosecuting Attorney, and *M. Grove Hatch*, Assistant Prosecuting Attorney, for the people.

KUHN, J. The respondent was charged and convicted of having received and aided in the concealment of 2,450 cigars, of the value of $103, well knowing the same to have been stolen property. This property, it appears, was stolen by Orrin J. Robinson and Homer Patch, both of whom were ex-convicts. Upon the trial of the respondent, the prosecuting attorney attempted to introduce a claimed written statement of Robinson, not under oath, it being claimed that this so-called confession of Robinson was read in the presence of the respondent, Fitzgerald, after his arrest and having been taken to the police station. The introduction of this statement was objected to and the objection sustained by the court. Mr. John Hudson, the chief of police, testified on the trial that when the respondent was brought to the police station, the following brief conversation occurred between himself and respondent:

"I was at the police station when Fitzgerald was brought in by Abbott for this offense; I had a little talk with Fitzgerald; I told him, 'Ed, you have got in wrong.' He says, 'It looks like it.' I says, 'Do you

want to tell us about this?' He says, 'I don't want to say anything about it until I see an attorney.' I asked him no further questions."

On cross-examination, the witness would not say positively whether he said, "you have got in wrong," or, "you are in trouble." In charging the jury, the court, notwithstanding the elimination of the unsworn statement in the case, charged as follows:

"Something has been argued to you as to the silence of the respondent when he was questioned about the crime with which he is charged here. In that regard I will say to you that silence, to be equivalent to a confession, it must be shown that the accused had heard and understood the specific charge against him and that he heard it under circumstances not only permitting, but calling on him for a denial, taking into consideration all the circumstances and the persons who were present, Silence of the accused may spring from such a variety of motives, some of which may be consistent with innocence, that silence alone is very slight evidence of guilt, and aside from the inference which may arise from attendant circumstances should be received with caution as proof of guilt.

"If the respondent shall show by evidence to the satisfaction of the jury that his silence was caused for reasons or prompted by motives consistent with innocence and the accusatory statements, his silence should be disregarded."

It is the contention of respondent's counsel that this charge was improperly given and prejudicial to respondent's rights, because there was no evidence in the case which would warrant the submission of the question involved to the jury. It is undoubtedly true, as contended by counsel for the people, that on the authority of *People* v. *Courtney*, 178 Mich. 150, and what seems to be the rule as stated by text book writers, there are certain circumstances where the silence of the respondent may be weighed against him. In our opinion, however, there is nothing in this rec-

ord which would warrant the submission of this question to the jury. The respondent did not remain silent, but answered the questions that were put to him, and what he did say in response to the question as to whether he wanted to tell anything about it, was to the effect that he would say nothing further until he had seen an attorney, which rather showed dissent than assent. There were no attending circumstances which called upon the respondent to speak, and in our opinion the submission of this question, in view of the state of the record, was clearly prejudicial to the respondent's rights. For an interesting discussion of this question in a somewhat similar case, see *O'Hearn* v. *State*, 79 Neb. 513 (113 N. W. 130).

On the trial, on cross-examination, the witness Robinson was asked by respondent's counsel whether he had burglarized certain buildings prior to the burglary involved in this case, which he admitted. The prosecuting attorney showed on redirect examination that Robinson sold Nick LeSeno and Mary LeSeno some ham and bacon, which it was claimed was stolen, and that Fitzgerald was present at the time, and it is claimed this was brought out for the purpose of showing guilty knowledge on the part of Fitzgerald in the case under consideration. Thereupon respondent's counsel sought to show that Mary LeSeno had been brought into the police court of Jackson prior to Fitzgerald's trial; that she had been charged with receiving blankets stolen by Robinson; that Robinson had been a witness upon her trial; and that she had been acquitted. Upon the cross-examination of Robinson he testified that he had burglarized the residence of a man by the name of Carroll and had procured blankets therefrom, and that he claimed that he had sold the same to Mary LeSeno. It appears, however, that the prosecuting attorney did not ask Robinson about the disposition of the blankets procured in the Carroll

burglary, either on direct or redirect examination. We are, therefore, of the opinion that there was no error in the court excluding the testimony with reference to the acquittal of Mary LeSeno on the charge of having received the property from this burglary, the subject-matter of which was not gone into on the direct or redirect examination by the prosecuting attorney.

The claim is also made that the argument of the prosecuting attorney to the jury, and also certain questions asked by the prosecuting attorney of a witness while on the stand, were prejudicial to respondent. Objection was promptly made by respondent's counsel, and the court sustained his position with reference to these matters, and therefore they will in all likelihood not occur again upon a new trial.

Because of having given the charge to the jury as to the silence of the respondent, which, in our opinion, as we have said, was prejudicial to the respondent, and which must therefore be said to have resulted in a miscarriage of justice (see *People* v. *De Meaux*, 194 Mich. 30), the conviction must be, and is hereby, reversed and the respondent granted a new trial.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.